UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELVIS DAVIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-12332** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "N" (4)** |

## REPORT AND RECOMMENDATION

### I. Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Elvis Davis claim for Disability Insurance Benefits and Supplemental Security Income under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c). The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 73.2(B), for the submission of Proposed Findings and Recommendations.

### II. Factual Summary

On July 1, 2016, the claimant, Elvis Davis ("Davis"), filed this appeal of the denial of Disability Insurance Benefits and Supplemental Security Income. R. Doc. 1. Davis is a fifty-five year old male with slightly more than a fourth grade education and past work as a line server, dishwasher, bus boy, and stocker. R. Doc. 11-3, Tr. 83-90; R. Doc. 11-2, Tr. 44.

Davis states that he protectively filed for Disability Insurance Benefits and Supplemental Security Income on October 22, 2012. R. Doc. 12, p. 1. His application was initially denied on January 10, 2013. R. Doc. 11-4, Tr. 131-36. After reconsideration, Davis's application was again denied on May 20, 2013. R. Doc. 11-4, Tr. 145-48. Davis then filed a request for a hearing, which took place on March 4, 2014 before Administrative Law Judge Donald J. Willy ("ALJ"). R. Doc. 11-2, Tr. 73-82. That hearing was continued after the ALJ determined that a number of consultative examinations needed to occur. *Id.* Another hearing occurred before the ALJ on September 22, 2014. *Id.* at Tr. 30-

72. Thereafter, the ALJ issued a decision finding Davis was not disabled. *Id.* at Tr. 9-29. That decision was affirmed by the Appeals Council. *Id.* at Tr. 1-6.

Davis filed his claiming alleging that he was disabled as a result of diabetes, high blood pressure, and an inability to read or write. R. Doc. 11-3, Tr. 83. Based on his determination, the ALJ determined that Davis was not disabled. R. Doc. 11-2, Tr. 13. The ALJ found that Davis had the following severe impairments: pulmonary impairments, borderline intellectual functioning, and depressive disorder. *Id.* at Tr. 15. However, the ALJ found that none of Davis's impairments met or medically equaled the severity of the one of the listed impairments. *Id.* at Tr. 16.

Thereafter, the ALJ determined that Davis had a residual function capacity ("RFC") to perform light work in a temperature-controlled environment with no exposure to extreme temperatures and free from pulmonary irritants such as fumes. *Id.* at 18. The ALJ also found that Davis's mental RFC was such that the he could do simple tasks, engage in occasional interaction with public, stay on task 90% of the time, and miss no more than one day of work per month. *Id*. Therefore, the ALJ determined that Davis was not disabled because he is capable of performing past relevant work as a cafeteria attendant, which would not require performance of work-related activities precluded by Davis's RFC. *Id.* at 23. Finding that Davis was not disabled, the ALJ stopped his evaluation of Davis's disability claim at this finding.

Davis argues that the ALJ's denial of his disability was incorrect for three reasons. R. Doc. 12. First, Davis argues that the ALJ erred by determining that Davis was capable of performing past work because Davis's job was a "composite" job and therefore a denial is only appropriate where the claimant can perform all aspects of the job. Because he cannot perform all aspects of a cafeteria attendant,[1] Davis argues that the ALJ erred in finding he was not disabled and should have continued

---

[1] DOT #311.677-010

onto a Step Five inquiry. Second, Davis argues that the ALJ erred by not evaluating the medical necessity of Davis's need for an assistive device in the RFC finding. Finally, Davis also argues the ALJ should have also evaluated his illiteracy, which would only be relevant under a Step Five analysis.

In response, the Commissioner argues that there is substantial evidence to support the ALJ's Step Four finding that Davis was capable of performing past relevant work. R. Doc. 13, p. 4. Moreover, the Commissioner argues that there is substantial evidence to support the ALJ's RFC assessment. *Id.* at p. 7.

### III.   Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-Step sequential evaluation process.  The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.  *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at Step Five.  *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

## IV.   Analysis

### A.   Ability to Perform Past Relevant Work

Davis contends that the ALJ's Step Four denial was contrary because the ALJ did not properly consider Davis's job to be a "composite" job.[2] R. Doc. 12, p. 3. In particular, Davis states that his

---

[2] "[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2 (1992).

initial application described his past work at Treasure Chest Casino of consisting of dishwashing, setting up the buffet table, and serving food. *Id.*; *See also* R. Doc. 11-6, Tr. 242. Davis argues then that his past relevant work was a composite job consisting of dishwashing and stocking in addition to serving food. *Id.* at p. 5. Davis contends that composite jobs cannot be generally preformed, and the ALJ should have analyzed Davis's ablity to perform the past relevant work experience as actually performed. As such, he argues that the ALJ erred then by determining that Davis could perform relevant past work as a cafeteria attendant, which does not include dishwashing or stocking, as generally performed because (i) that was an improper job description for Davis relevant work and (ii) the ALJ should have determined if Davis could have actually performed the job duties as required in his composite position.[3]

In turn, the Commissioner argues that there was substantial evidence to support the ALJ's determination that Davis could perform past relevant work. R. Doc. 13, p. 4-5. The Commissioner argues that the Fifth Circuit does not require that the ALJ find that the claimant be able to perform all aspects of a former job even if Davis's job was a composite job. *Id.* at p. 5. Rather, the ALJ properly relied on the vocational expert's testimony to determine the requirements of the fact-specific inquiry into whether the claimant could perform the composite job. *Id.* at p. 5-6.

"[T]he claimant is not disabled if the claimant's impairments do not "prevent [the claimant] from doing past relevant work." *Leggett v. Chater*, 67 F.3d 559, 564 (5th Cir. 1995) (citing 20 C.F.R. § 404.1520(e)).. "[T]o qualify as past relevant work, work experience must have (a) occurred within the last 15 years; (b) lasted long enough for the claimant to learn to do it; and (c) constituted substantial gainful activity." *Thomas v. Comm'r of Social Sec. Admin.*, No. 03-925, 2005 WL 588752, at *7 (E.D. Tex. Jan. 3, 2005) (citing 20 C.F.R. § 404.1565(a)). "A claimant is not disabled at step

---

[3] DOT #311.677-010

four if the claimant can perform [her] past relevant work either as the claimant actually performed it or as generally performed in the national economy." *Henson v. Colvin*, No. 12–3053, 2014 WL 115275, at *4 (E.D. La. Mar. 14, 2014) (internal quotation and citation omitted) (order adopting report). Where the ALJ has determined that a claimant has the capacity to perform a past relevant job, the decision must contain the following specific findings: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 WL 31386, at *4 (1982).

> In addition, SSR 82-61 provides further clarification for "composite jobs:"
>
> [C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert.

SSR 82-61, 1982 WL 31387, at *2 (1992). As such, in evaluating a composite job, "an ALJ may consult a [vocational expert] to determine the proper characterization of the claimant's past work, and whether she can return to that past work as she actually performed it or whether she can perform the work as it is generally performed in the national economy." *Holland v. Colvin*, No. 14-2964, 2015 WL 5437727, at *11 (N.D. Tex. Aug. 31, 2015).

During the hearing before the ALJ, the vocational expert, Thomas King, testified that Davis had performed past work as both a dishwasher and as a cafeteria line server. R. Doc. 11-2, Tr. 63. The vocational expert further stated that, while Davis could not return to work as a dishwasher, Davis was capable of returning to work as a liner server within the RFC defined. *Id.* at Tr. 64. The vocational expert further stated that the line server job would be categorized as a cafeteria attendant, DOT # 311.677-010. *Id.*. Davis's attorney inquired about the scope of duties, to which the vocational expert stated that the line server primarily serves food on the line and might return unused food to the kitchen

6

at the end of the day. *Id.* at Tr. 69-70. Finally, Davis stated that he thought he could return to the job serving on the line. *Id.* at Tr. 65.

Relying on the testimony of the vocational expert as well as the claimant, the ALJ determined that Davis could return to the past relevant work as a cafeteria worker. *Id.* at Tr. 23. Moreover, the ALJ further found that the job requirements of a cafeteria attendant were within the RFC defined for Davis. *Id.* As such, the ALJ found that Davis could perfom the past work as generally and actually performed. The Court finds that the ALJ was supported by substantial evidence in his findings, not only given the vocational expert's testimony but also the testimony of Davis himself. Even if the ALJ should have considered the job a composite job as argued by Davis, the ALJ was justified in consulting the vocational expert for the proper classification of Davis's job. *See Holland* 2015 WL 5437727, at *11.

### B.     Residual Functional Capacity

Davis argues that the ALJ's determination as to his Residual Functioning Capacity ("RFC") was not substantially justified because the ALJ made no express findings with respect to the medical necessity of Davis's use of a cane. R. Doc. 12, p. 9. Davis argues that by not making a finding as to the medical necessity of the cane Davis allegedly uses, the ALJ did not fulfill his obligation to develop a full and accurate record. *Id.*

In response, the Commissioner argues that the ALJ was substantially justified in his findings as to Davis's RFC. R. Doc. 13, p. 7. The Commissioner further argues that for a hand-held assistive device to be medically required there must be some medical documentation for a need for the device. *Id.* As such, given Davis's own concession that the cane is not prescribed and the medical record that Davis did not require a cane, the Commissioner argues that the ALJ did not err by not including the cane in his analysis of Davis's RFC. *Id.* at p. 7-8.

First, the Court is not convinced that the ALJ did not properly consider the cane. In making his findings, the ALJ considered the November 2012 function report completed by on Davis's behalf by his sister. R. Doc. 11-2, Tr. 19. The ALJ noted that the sister indicated that Davis required a cane because of constant back and leg pain. *Id.* However, the ALJ found that the Davis's credibility was undermined because he was exaggerating his symptoms, gave inconsistent statements about his limitations, and received for a period of time unemployment benefits which requires that the unemployed be able to return to work. *Id.* at Tr. 19-20.

An ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record. *Foster v. Astrue,* 277 Fed. App'x 462, 464 (5th Cir. May 08, 2008). Credibility determinations are generally entitled to great deference. *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir.2000); *see Gonzales v. Astrue,* 231 Fed. Appx. 322, 323 (5th Cir. May 15, 2007) (adverse credibility determination made by an ALJ with respect to claimant seeking social security disability benefits was supported by inconsistencies in claimant's testimony and between claimant's testimony and documentary evidence). While credibility issues are for the Commissioner and not the courts to resolve, a credibility determination based entirely on mistaken facts is not supported by substantial evidence and is subject to reversal by this Court. *See Newton*, 209 F.3d at 459.

Here, the ALJ's credibility determination was supported by substantial evidence. Davis gave a multitude of inconsistent statements regarding his limitations as: (i) his ability to lift items, *Compare* R. Doc. 11-6, Tr. 250 (stating he could lift only five pounds) *with* R. Doc. 11-6, Tr. 281 (stating he could occasionally lift fifty pounds) *with* R. Doc. 11-2, Tr. 48 (stating he could lift 30-35 pounds all day); and (ii) his ability to walk. *Compare* R. Doc. 11-6, Tr. 250 (stating he could only walk half a block without resting) *with* R. Doc. 11-2, Tr. 47 (stating he could walk two blocks without resting). Additionally, the consultative examinations revealed possible malingering. In a 2013

ophthalmological consultative exam, Dr. Michael Bloome noted that Davis was probably malingering in connection with Davis's complaints of decreased vision. Additionally, in a 2012 consultative examination, Dr. Paul Dibble noted that while direct testing of Davis revealed only light perception, but that Davis acted with better vision as he could regard where he was in the room and navigate through rooms with obstacles. R. Doc. 11-7, Tr. 307. Given this, the ALJ was substantially justified in doubting Davis's credibility and thereby ignoring Davis's complaint of a need for a cane and instead evaluating his RFC based on the objective medical record.

Second, even if the ALJ should have considered the medical necessity of Davis's cane, the law provides that procedural perfection is not required, and an adjudication of the Commissioner is not to be vacated unless a substantial right of the claimant has been adversely affected. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The Fifth Circuit explained in a Social Security action involving a severity determination issue similar to the one presented in this action, that "[t]he major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988). *See also Carter v. Massey–Ferguson, Inc.,* 716 F.2d 344, 349 (5th Cir.1983); *Gulf States Utils. Co. v. Ecodyne Corp.,* 635 F.2d 517, 519–20 (5th Cir. 1981).

In order for a cane, or a hand-held assistive device, to be medically required, there must be some medical documentation as to the need for the device to aid in walking/standing and establishing the circumstances in which it is needed. *See* SSR 96-9P, 1996 WL 374185, at *7; *see also Pokriots v. Astrue*, No. 11-117, 2012 WL 2395184, at *6-7 (D. Idaho June 25, 2012) ("Dr. McNulty did not prescribe the use of a cane, did not recommend the use of a cane, and his notes do not support the conclusion that a cane is medically necessary. Although he may have acquiesced in Petitioner's use of a cane on August 21, 2008, the Court cannot infer that he found it necessary for Petitioner to use a cane."); *Mays v. Astrue,* No. 11-433, 2012 WL 1865496 at *7 (N.D. Ohio, May 22, 2012) ("although

Dr. Marshall acknowledges Plaintiff's use of a cane, his medical notes reveal that he did not prescribe the cane, nor did he recommend the cane for ambulation. Moreover, Dr. Marshall's notes do not support the conclusion that the cane is medically necessary. Accordingly, the ALJ did not err in refusing to consider Plaintiff's use of a cane for ambulation in formulating his RFC.").

Here, by Davis's own admission, he was not prescribed a cane. R. Doc. 12, p. 9. Moreover, as of August 5, 2014, Davis indicated in a questionnaire that he did not require the use of a cane or other assistive device for standing/walking. R. Doc. 11-6, Tr. 281. Davis can also not point to any recommendation to use a cane. Finally, the medical evidence does not support the conclusion that a cane is medically necessary for Davis. In fact, a number of medical reports indicated that Davis had a full range of motion and no indication of any difficulties walking. *See* R. Doc. 11-7, Tr. 307 (December 13, 2012 examination finding Davis had full range of motion and could walk "without any difficulty"); *see also* R. Doc. 11-7, Tr. 391 (medical record of February 3, 2013 admit-date stating "ambulatory with steady gait with no apparent distress"); R. Doc. 11-7, Tr. 598 (medical record dated March 19, 2014 that Davis had "coordination and normal gait"). As such, even if the ALJ committed error by not explicitly making a finding on Davis's use of cane, the error was harmless because the record does not support a finding that Davis's use of a cane is medically necessary because he was never prescribed a cane, never received a recommendation to use a cane, and the medical record does not support a finding that it was necessary.

Therefore, the ALJ's determination as to Davis's RFC was supported by substantial evidence. Note, because the undersigned has determined that the ALJ did not err in either his Step Three or Step Four findings, the undersigned does not reach Davis's argument concerning his illiteracy because, as the Davis concedes, "if no error is found with regard to the ALJ's Step Four finding in this case, then [Davis's] illiteracy is not relevant, since he obviously performed that job despite his illiteracy." R. Doc. 12, p. 13.

## V.      Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Elvis Davis's claim for Disability Insurance Benefits and Supplemental Security Income Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 23rd day of February, 2017

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**